**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiffs <br><br> vs. <br><br> PMAX COMMERCIAL INSURANCE SERVICES, INC. D/B/A PASCAL BURKE INSURANCE BROKERAGE and STARR SURPLUS LINES INSURANCE COMPANY <br><br> Defendants. | Case No. 1:15-cv-7722 <br><br> CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Abante Rooter and Plumbing, Inc. ("Abante" or "Plaintiff"), which is owned and operated by Fred Heidarpour ("Mr. Heidarpour") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission.[1] The TCPA is designed to protect consumer privacy by prohibiting unsolicited, prerecorded calls, unless the caller has the "prior express written consent" of the called party.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015).

3. Mr. Heidarpour alleges that Defendant PMAX Commercial Insurance Services, Inc. d/b/a Pascal Burke Insurance Brokerage ("Pascal Burke Insurance") made repeated automated telephone calls using equipment prohibited by the TCPA to promote the services of Starr Surplus Lines Insurance Company ("Starr Insurance") (collectively referred to as the "Defendants") violated the TCPA by telemarketing to his residential telephone line and his cellular telephone line via pre-recorded message without his prior express written consent.

4. Because the calls to Mr. Heidarpour were transmitted using technology capable of generating thousands of similar calls per day, Mr. Heidarpour brings this action on behalf of a proposed nationwide class of other persons who received illegal telephone calls from Pascal Burke Insurance.

5. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Abante is a California corporation.

7. Defendant PMAX Commercial Insurance Services, Inc. d/b/a Pascal Burke Insurance Brokerage is a California Corporation that has its principal office is at 335 Monterey Dr., Laguna Beach, CA 92651. It also has a registered address of 191 Flower St., Costa Mesa, CA 92627. Pascal Burke Insurance makes telemarketing calls nationwide to attempt to solicit customers for Starr Insurance, including into this District.

8. Defendant Starr Surplus Lines Insurance Company is an Illinois Corporation with a registered address of 500 West Monroe St., 31st Floor, Chicago, IL 60661, and is a resident of this District.

**Jurisdiction & Venue**

9. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants are residents of this district, and a substantial part of the events and omissions giving rise to the claim occurred in this District. This includes this District being where Starr Insurance contracts with third parties, such as Pascal Burke Insurance, to make telemarketing calls on its behalf, as well as where calls were made from that may give rise to putative class claims, and there are putative class members located in this District.

**TCPA Background**

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. Under the TCPA, as interpreted by the Federal Communications Commission, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

14. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

15. In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

16. In May of 2013, the FCC reinforced this issue. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services.").

17. The 2013 FCC Order further explained:

To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the

4

burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

[ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call.

*Id.* at ¶¶ 46-47).

18. Accordingly, it is undeniably clear, that an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call under a number of theories, including vicarious liability. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

### *The TCPA Bans Autodialer Calls to Cellular Telephones*

19. The TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones.

20. The TCPA categorically bans persons and entities from initiating telephone calls using an automated telephone dialing system (or "autodialer") to any telephone number assigned to a cellular telephone service. *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).

### **Factual Allegations Relating to the Call to the Plaintiff**

21. Pascal Burke Insurance makes telemarketing calls nationwide to attempt to solicit customers for Starr Insurance, including into this District.

22. Pascal Burke Insurance telemarketing efforts included calling the cellular telephone of the Plaintiff.

23. On April 22, 2015, Pascal Burke Insurance placed a telemarketing call to (925) 253-XXXX.

24. This telephone number is registered to a cellular telephone service.

25. After the call was answered, there was a significant pause and no one was on the other end of the call.

26. In fact, the recipient stated "hello" several times prior to the call being answered by the calling party.

27. The facts in the preceding paragraphs indicate the call was placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

28. After the call connected, "Steve" from Pascal Burke Insurance begin to ask basic questions regarding the Plaintiff's business, such as:

   a) How long have you been in business?

   b) What is the full name of your business?

   c) How many employees do you have?

   d) What is the address for the business?

29. After these form questions were completed, the Plaintiff received an e-mail from steve@pmaxins.com.

30. This e-mail included a quote for Starr Insurance services, and includes Starr Insurance's telephone number on the quote.

31. The quote asks the Plaintiff to e-mail a copy of the application to Starr Insurance.

32. The quote also states that "[Starr] will review your submission and bind".

33. Finally, the quote informs the Plaintiff to "contact [Starr] for more details."

34. Despite the fact that the Plaintiff was not interested in being solicited for Starr Services, Pascal Burke Insurance resent the quote to the Plaintiff on May 26 and July 31, 2015.

35. The Defendants did not have the Plaintiff's valid prior express written consent to make these telemarketing calls.

36. In fact, prior to the filing of this lawsuit, the Plaintiff contacted Pascal Insurance regarding any purported consent to make the calls at issue. In response, Pascal Insurance did not provide any evidence of consent.

Upon information and belief, the calls to plaintiff and the class were made without regard to whether the called party consented to such calls, and neither Starr Insurance nor Pascal Burke Insurance obtained express written consent for any of the calls before the calls were made.

### Starr Insurance's Liability for the Calls at Issue

37. Starr Insurance relies on third parties, such as Pascal Burke Insurance, to solicit new applications for its business.

38. The third parties that Starr Insurance contracts with, such as Pascal Burke Insurance, engage in telemarketing to promote Starr Insurance's products.

39. Through this contract, as well as by other means, Starr Insurance maintains interim control over its agents' actions, both as to telemarketing and other activities. Moreover, Starr Insurance, at all times, has the absolute ability to control Pascal Burke's use and method of telemarketing.

40. For example, upon information and belief, Starr Insurance directs the geographical area for which its agents may take credit and earn fees.

Starr Insurance manifested assent to Pascal Burke's telemarketing campaign by issuing quotes and writing insurance policies arising directly therefrom. Starr Insurance either had actual knowledge that such quotes or new customers arose from such telemarketing campaigns, or made a conscious decision not to learn the specifics, such that it manifested assent in that way.

### Class Action Allegations

41. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

42. The classes of persons Plaintiff proposes to represent include:

All persons within the United States whom Defendants, directly or through any third parties, initiated a telephone call with the same or similar dialing system as was used to call plaintiff to a number registered as a cellular telephone line within four years before this Complaint was filed through the date of class certification.

43. Excluded from the classes are the Defendants, any entities in which the Defendants has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

44. The proposed class members are identifiable through phone records and phone number databases.

45. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

46. Plaintiff is a member of the class.

47. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

      a.    Whether the Defendants used an automatic telephone dialing system to make the calls at issue;

      b.    Whether the Defendants placed telemarketing calls without obtaining the recipients' valid prior express written consent;

      c.    Whether the Defendants' violations of the TCPA were negligent, willful, or knowing; and

      d.    Whether the Plaintiff and the class members are entitled to statutory damages as a result of the Defendants' actions.

48.    Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members.

49.    Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

50.    The actions of the Defendants are generally applicable to the class as a whole and to Plaintiff.

51.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

52.    The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

53. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

54. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

55. The Defendant violated the TCPA by (a) initiating a telephone call using an automated dialing system and/or prerecorded voice to Plaintiff's telephone number, or (b) by the fact that others caused the initiation of those calls on its behalf.

56. The Defendant's violations were negligent, willful, or knowing.

### Count Two:
### Injunctive Relief

57. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

58. The TCPA authorizes injunctive relief to prevent further violations of the TCPA.

59. The Plaintiff respectfully petitions this Court to order the Defendant, and its employees, agents and independent contractors, to immediately cease engaging in unsolicited telemarketing in violation of the TCPA.

### Relief Sought

For himself and all class members, Plaintiff requests the following relief:

1. That the Defendants be restrained from engaging in future telemarketing in violation of the TCPA.

2. That the Defendants, its agents, and anyone acting on its behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify class members.

3. That the Court certify the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

4. That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation.

5. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

Dated: September 1, 2015     By:   /s/ Alexander H. Burke
Alexander H. Burke
Email: aburke@burkelawllc.com
155 North Michigan Avenue, Suite 9020
Chicago, Illinois  60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

Edward A. Broderick
Email: ted@broderick-law.com
Anthony Paronich
Email: anthony@broderick-law.com
BRODERICK LAW, P.C.
99 High St., Suite 304
Boston, Massachusetts  02110
Telephone: (617) 738-7080
*Subject to Pro Hac Vice*

11

Matthew P. McCue
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
*Subject to Pro Hac Vice*

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, e-mails, phone records, dialer records, dialer reports, documents, and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party or vendor associated with any telephone call, campaign, account sale, or file associated with plaintiff or the putative class members, and any account, number, or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of defendant.

/s/Alexander H. Burke